UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
THOMAS F. KOVACH, :
                Plaintiff, :
v. :
   :
UNITED STATES OF AMERICA, UNITED :   **OPINION AND ORDER**
STATES DEPARTMENT OF DEFENSE, :
UNITED STATES AIR FORCE, THE STATE :   19 CV 7065 (VB)
OF NEW YORK, NEW YORK AIR :
NATIONAL GUARD, THE 105TH AIRLIFT :
WING, and MAJ. GEN. PAUL A. WEAVER, :
JR. (RET.), :
                Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Thomas F. Kovach, proceeding pro se and in forma pauperis, brings this Federal Water Pollution Control Act (the "Act," commonly known as the "Clean Water Act" or the "CWA") action pursuant to Section 505(a), the Act's citizen-suit provision, 33 U.S.C. § 1365(a)(1), against defendants United States of America, United States Department of Defense, United States Air Force (collectively, the "Federal Defendants"), the State of New York, the New York Air National Guard, the 105th Airlift Wing (collectively, the "State Defendants"), and retired Major General Paul A. Weaver, Jr.

      Now pending are motions by the Federal Defendants, the State Defendants, and Weaver to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). (Docs. ##25, 62, 83).

      For the reasons set forth below, the motions are GRANTED.

1

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff alleges that in 1990, he was a member of the New York Air National Guard, 105th Airlift Wing, on Active Guard and Reserve status, stationed at Stewart Air National Guard Base ("Stewart") in Newburgh, New York.

Plaintiff claims that late in the evening on August 10, 1990, he was patrolling Stewart as supervisor of the "Security Police" when he witnessed an intentional dumping incident at the base. (See Doc. #2 ("Compl.") ¶ 14). According to plaintiff, "Weaver and [non-party Lieutenant Colonel John] Stiene were overseeing a crew from the Fire Department." (Id. ¶ 8). Plaintiff alleges that crew "us[ed] a fire truck as a 'sump pump' to suck out chemically-contaminated stormwater and/or wastewater from a man-made detention pond . . . and then pump[ed] the foamy contaminant over the base's perimeter fence and onto the property of the 'civilian side' of Stewart." (Id.). Plaintiff further alleges the "foamy contaminant flowed downhill to a small body of water" and then into a small creek. (Id. ¶ 15).[1]

In addition, plaintiff alleges that after midnight on August 11, 1990, he "got the number for the [New York State Department of Environmental Conversation ("NYS DEC")] Hotline, and reported the dumping incident." (Compl. ¶ 16). Plaintiff claims that the following week, the "NYS DEC sent a spill response team . . . in an attempt to contain the foam." (Id. ¶ 17).

---

[1] According to plaintiff, the "foamy contaminant was later identified as a mixture of leaked fire-fighting foam (FFF) concentrate" containing perfluorooctane sulfonic acid (PFOS) and "other airfield runoff (such as fuel, hydraulic fluid, and de-icing fluid)." (Compl. ¶¶ 9–10).

2

However, according to plaintiff, by then it was too late because "the foam had already been flowing downstream for days." (Id.).

Plaintiff alleges he has suffered ongoing health problems ever since the August 10, 1990, incident. He claims these "problems have recently been documented as having been proximately caused by PFOS ingestion from the base water supply." (Compl. ¶ 20). Plaintiff asserts that in November 2018, the U.S. Department of Veterans Affairs "recognized PFOS ingestion as a public-health problem for persons stationed at certain military bases." (Id.).

Plaintiff further alleges that on June 12, 2019, he "was notified that his blood test showed double the 'reporting limit' of PFOS, and four times the reporting limit of a related compound." (Compl. ¶ 25). According to plaintiff, "[u]sing the chemical half-life of PFOS . . . published by the US Centers for Disease Control," he "calculated that his blood-PFOS level during the time that he was stationed at Stewart . . . was at least 128 times the safe limit for drinking water." (Id. ¶ 26) (emphasis in original).

Plaintiff commenced this action on July 29, 2019, pursuant to the citizen-suit provision of the Clean Water Act, which provides:

> [A]ny citizen may commence a civil action on his own behalf . . . against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.

33 U.S.C. § 1365(a)(1). Plaintiff seeks to hold Weaver liable, as well as the Federal and State Defendants, under a theory of respondeat superior. Plaintiff seeks personal damages of "$25,000 per day, tolling from the intentional dumping incident on [August 10, 1990,] until the date of this [c]omplaint [July 23, 2019]. According to an online date calculator, that is 10,574 days, thus totaling $264,350,000." (Compl. ¶ 29) (emphasis in original). Plaintiff also seeks other relief,

3

including "retroactive military promotion, retroactive military retirement, award of Airborne wings, etc." (Id. ¶ 31).

## DISCUSSION

I.  Standard of Review

    A.  12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009).[2]  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011).  The party invoking the Court's jurisdiction bears the burden of establishing that jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143.  "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)).  When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the Court should consider the Rule 12(b)(1) challenge first. Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

---

[2]  Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

II.     Standing

The State Defendants argue plaintiff lacks standing because plaintiff's injuries are not redressable by the Court.

The Court agrees.

If a plaintiff lacks Article III standing, a court lacks subject matter jurisdiction to hear the plaintiff's claim. Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005). To satisfy Article III's standing requirements, a plaintiff must establish at minimum three elements: (i) an "injury in fact"; (ii) a causal connection between the injury and the defendant's conduct; and (iii) a likelihood that a federal court decision will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). "[A] plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).

"The [Clean Water] Act authorizes district courts in citizen-suit proceedings to enter injunctions and to assess civil penalties, which are payable to the United States Treasury." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. at 175 (citing § 1365(a)). Thus, "[t]o the extent that [civil penalties] encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct." Id. at 186. However, a complaint nevertheless fails the third test of standing—redressability—if "[n]one of the specific items of relief sought, and none that we can envision as 'appropriate' under the general request, would serve to reimburse [plaintiff] for losses caused by" defendant's conduct. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 105–06 (1998).

5

Here, plaintiff lacks standing to sue under the Clean Water Act because the citizen-suit provision requires any civil penalties be paid to the U.S. Department of Treasury, not to private litigants, and plaintiff's requested redress is private damages payable to him personally.[3] Although defendants argue plaintiff cannot plausibly allege injury in fact, the Court need not reach that question, because the complaint fails the third test of standing, redressability.[4]

The State Defendants are correct to point out that plaintiff's requested private damages are not payable to him personally pursuant to the statute but instead, any damages are to be paid to the U.S. Department of Treasury. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. at 175. Yet, even after being made aware of the limitations on recovery inherent in the citizen-suit actions under the CWA, plaintiff presses on. Specifically, he argues, "while the cited statute requires the [State] Defendants to pay 'civil penalties' to only the US Treasury, and not to the Plaintiff . . . there is no reason that the Court cannot then direct that the US Treasury pay some portion of that to the Plaintiff." (Doc. #87 at 6–7). But that is not how Congress intended the citizen-suit provision to operate. See Middlesex Cty. Sewerage Auth. v. National Sea Clamers' Ass'n, 453 U.S. 1, 21 (1980). Indeed, the Supreme Court ruled in Middlesex County Sewerage Authority that the citizen-suit provision of the Clean Water Act does not provide for compensation or redress to individual plaintiffs through an implied private

---

[3]  Plaintiff also requests "certain tangibles and intangibles (in lieu of part of the case damages), to include retroactive military promotion, retroactive military retirement, award of Airborne wings, etc." (Compl. ¶ 31). Such relief is also beyond the scope of Section 1365(a). See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. at 175.

[4]  Indeed, the Federal Defendants argue plaintiff alleges a "wholly past" violation, which cannot confer jurisdiction under the Act's citizen-suit provision. See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49 (1987). Because the Court concludes plaintiff lacks standing under Article III's case-or-controversy requirement, the Court's inquiry ends there, and the Court need not decide whether the complaint's allegations respecting a thirty-year-old violation of the CWA at a state military base fails to state a claim as a matter of law.

right of action.  Id.  Thus, plaintiff cannot establish the third prong of the standing analysis, that the relief he seeks would provide redress or compensation for his alleged injury.

Accordingly, the Court concludes plaintiff lacks standing under the citizen-suit provision, and therefore plaintiff's Clean Water Act claim against all defendants must be dismissed.

III.   Tort Claims

Defendants argue to the extent plaintiff alleges a claim pursuant to the Federal Tort Claims Act ("FTCA") and other relevant tort claims, such claims should also be dismissed.

However, plaintiff's stated position is "the FTCA was not the basis for the instant Complaint" and plaintiff "did not bring this action as an individual 'tort.'"  (See Doc. #70 at 5, 11).  Thus, the Court declines to assess whether any tort claims could survive the instant motions.

IV.   Leave to Amend

The Federal Defendants argue plaintiff should not be granted leave to amend because amendment would be futile.

The Court agrees.

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires."  Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim."  Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000).  District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

However, leave to amend may "properly be denied for . . . 'futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  This is true even when plaintiff is proceeding pro se.  See Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016).  An amendment to a pleading is futile if the Court would lack subject matter jurisdiction over the proposed claim.  See Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany, 615 F.3d 97, 99 (2d Cir. 2010).  Such is the case here.

## CONCLUSION

The motions to dismiss are GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is directed to terminate the motions (Docs. ##25, 62, 83) and close this case.

Dated: July 15, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge